### STATE *v.* FRED KEZER.

October Term, 1901.

Present: TAFT, C. J., TYLER, MUNSON, START, WATSON and STAFFORD, JJ.

Opinion filed December 7, 1901.

*Intoxicating liquor—Peppermint essence—Right to sell.*

The sale of peppermint essence, which contains a large per cent of alcohol, and which, though generally used as a carminative, may be used as a beverage, with knowledge on the part of the seller that it is bought for use as a beverage or of facts sufficient to charge an ordinary man with such knowledge, is a violation of the statute prohibiting the sale of intoxicating liquors.

COMPLAINT for selling intoxicating liquors in violation of law. Plea, not guilty. Trial by jury at the September Term, 1901, Franklin County, *Rowell,* J., presiding. Verdict, guilty of one first offense. Judgment and sentence thereon. The respondent excepted.

*W. H. Fairchild* and *F. S. Tupper* for the respondent.

It being conceded that peppermint essence is a genuine medicine and manufactured as such, it cannot be made contraband by the manner or circumstances of its sale, and no issue of fact was presented. 25 Kansas 751; 37 Am. Rep. 284; *Carl* v. *State,* 87 Ala. 17; *Russell* v. *Sloan,* 33 Vt. 656

*D. W. Steele,* State's Attorney, for the state.

In cases of this character it is a question of fact whether the article is sold in good faith as a medicine. *Russell* v. *Sloan,* 33 Vt. 656; 2 Am. & Eng. Enc. Law, 572-5; *State* v. *Muncy,* 28 W. V. 494.

TYLER, J. The state's evidence tended to show that the respondent owned or occupied a building in which he kept a general store and a dance hall; that on the evening in question a dance was held, and during the evening the respondent's clerk sold one Kettle four or five ounce bottles of peppermint essence from a stock kept in the store, and that the respondent himself sold him three or four bottles of the essence that evening; that Kettle bought it to drink, did drink it and became intoxicated.

The state conceded that the article was manufactured and used as a medicine and for culinary purposes. The respondent conceded that it contained fifty per cent or more of alcohol. It also appeared that it was used almost wholly as a carminative, but that it could be used as a beverage.

The respondent moved the court to direct a verdict, for that the essence was not an intoxicating liquor within the prohibition of the statute; which motion was denied and the respondent excepted. The court submitted the case to the jury with instructions that if the clerk sold the essence to Kettle, knowing, or, acting as a careful and prudent man, having reason to know, that he wanted it to drink and not to use as a medicine, and he did use it to drink, the respondent was guilty; and the same instruction in effect was given in respect to sales by the respondent himself; to which the respondent excepted.

The statute prohibits the sale of "spirituous or intoxicating liquor, or mixed liquor, of which a part is spirituous or intoxicating," so the question is, whether this essence, manufactured solely for medicinal purposes, yet containing a suf-

ficient amount of alcohol to produce intoxication, may, in any circumstances, come within the terms of the statute.

It was clearly the intention of the legislature, in enacting the prohibitory law, to prevent the sale of those liquors as a beverage commonly known as and called intoxicating; and in this case it is not contended by the state's attorney and was not held by the trial court that this preparation ordinarily falls within this class of beverages so that its sale is unlawful. Though this and many other articles made for medicinal, culinary and other purposes contain a large per cent of alcohol, they are not made for beverages and fortunately are not often used as such. Their sale for the purposes for which they were manufactured is legitimate, while the sale of whiskey, gin, brandy and all other intoxicating liquors is unlawful. But when one of these preparations is sold for the purpose of intoxication, or the seller has reasonable cause to believe it is obtained for that purpose, the question is whether the sale is not in contravention of the statute; whether the parties by their voluntary act do not take the preparation out of its legitimate use and place it in the list of intoxicating liquors.

The purpose of the statute is, by prohibiting the sale of intoxicating liquors, to prevent their use and restrain intemperance, and it is a reasonable view that when a medicine, or other preparation containing enough alcohol to make a man drunk, is sold and bought for that purpose it is, by the act of the parties, given a *status* with intoxicating liquors.

The respondent relies upon Intox. Liq. Cases, 25 Kansas, 751, as an authority in his favor. It is there held, Judge Brewer giving the opinion, that medicines, preparations for the toilet and for culinary purposes, etc., prescribed in the U. S. Dispensatory or like standard authorities, are without the statute although they contain alcohol and may produce

intoxication; while certain other articles compounded of intoxicating liquors and other ingredients, such as bitters, cordials, tonics, etc., not known to standard authorities, may or may not be classed as intoxicating liquors, and that the question is one of fact for the jury. But it is further said that the real test is whether the distinctive character and effect of intoxicating liquor are gone, so that its use as an intoxicating beverage is practically impossible by reason of other ingredients; if so, it is outside of the statute; but if the intoxicating liquor remain as a distinctive force in the compound, and the compound is reasonably liable to be used as an intoxicating beverage, then it is within the statute.

In the above case the information was for selling intoxicating liquors, and the two kinds of preparations were distinguished from each other in the opinion, so that the question here presented was not before the court. If the case had been that a certain essence prepared from a formula in the U. S. Dispensatory, but containing a large per cent of alcohol, had been sold with the seller's knowledge that it was bought for intoxication and not for its legitimate purpose, we think the same decision would have been arrived at that is here announced.

It was held in *Carl* v. *State,* 87 Ala. 17, that prohibitory laws were designed to prevent the sale of intoxicating liquor as a beverage and do not apply to medicinal preparations, articles for the toilet, or for culinary purposes, of which alcohol may be a necessary ingredient; that the question is one for the jury, whether it was made and sold in good faith for these lawful purposes, or was intended for use as a beverage and was so used.

*Russell* v. *Sloan,* 33 Vt. 656, was an action brought to recover for a quantity of a certain patent medicine sold by the plaintiff to the defendant, and it was held, in accord with the

principle laid down in the Kansas and Alabama cases, that the prohibitory law does not apply to medicinal preparations in which alcohol is used in quantities sufficient to produce intoxication, such as bitters, etc., which are in good faith made and sold for medicinal purposes.

It is within the reasoning of all these cases to hold, as we do, that though this essence was manufactured for a lawful purpose and its sale as a medicine was not in violation of law, yet, when sold for an intoxicating beverage, containing as it did a large per cent of alcohol, its sale was, in the circumstances, a violation of the statute. The action of the court in denying the motion for a verdict and in submitting the question stated in the exceptions to the jury was therefore correct.

*Judgment that there was no error in the proceedings and that the respondent take nothing by his exceptions. Execution of sentence ordered.*